We will now hear argument in Roberts v. Genting, New York. Okay, Mr. Rose, you have reserved two minutes for rebuttal. So that gives you eight minutes out of the gate. You can take your mask off if you'd like. Not required to. If you leave it on, just make sure you speak into those microphones. You could even raise the lectern if you'd like. That might be advisable. Can you hear me? Well, let's see how it goes. Gotcha. I'm used to shorter lectures. Okay, you may proceed. Thank you, Your Honors. May it please the Court, my name is Jesse Rose. I represent the plaintiff's appellants in this matter. The district court erred by effectively gutting a significant portion of the Warren Act and New York Warren Act by applying an interpretation of what an operating unit and single site of employment are is that is exclusive and requires technical requirements which are nowhere located in the statute and interpretation by the Department of Labor or anywhere else in any other decision. The purpose of this act is to ensure when large numbers of employees are laid off that they are notified beforehand so they can prepare for this time of employment. No, I think we all know what the purpose of the statute is. I mean, the trick here is, of course, that organizations or enterprises are built differently. They are unique. And so courts have to look at different factors and make determinations. And so here, I mean, there's a lot of overlap, wouldn't you at least concede there's a lot of overlap between what went on in the buffet part of the resort as opposed to the casino as opposed to others? Well, I guess... Centralized kitchen, centralized warehousing, utilizing centralized functions of the rest of the casino? Yes, there was centralized support from this large company that operated, I believe, 20 different venues. But when you look at how the employer organized themselves, they organized themselves into restaurants. They have a aqueduct buffet, which is separate and distinct from their steakhouse, which is separate. Yeah, well, I mean, we've got a cafeteria in this building and we've got a cafeteria in the next building. But they share a lot of things in common. Your view is that because there's different locations, they're necessarily separate? If they have their own kitchen, if they have their own staff, if they have their own management, these are all factors that the Department of Labor highlighted when they were interpreting the statute to say that this is how the employer is organizing their units. There were 30 food facilities in the building, is that right? I believe that's what was identified in one filing, but my understanding is that there were four main restaurants and a food court, and then there were other areas throughout the casino. Yeah, I think the defendant was saying that there were 30 different facilities. I think your papers say there were seven. My question is, is each one of those seven facilities an operating unit in your mind? I think you'd have to look at how they're organized. In this instance, for the Aqueduct Buffet, the employees were assigned to work in the vast majority of them. The ones who actually went and prepared the food, served the food were the cashiers. They were assigned to work in the Aqueduct Buffet. They only worked outside of the Aqueduct Buffet on special circumstances. So they've been organized into a unit. They report to this one single location within the casino every day. Of the 177 employees, there were certainly quite a few who weren't assigned to the Aqueduct Buffet. Isn't that correct? The stewards, for example, the stewards worked everywhere? Yes, Your Honor. Like every big company, what they did was they specialized resources. So the stewards are the ones that clean the casino. They all were part of one unit, a group, that came in and they cleaned the entire casino and they were assigned based on where the manager for the stewards wanted them. That's actually accounted for in the law. Why are they included in the unit then? Because they were laid off as a result of the closure of the operating unit. If the Aqueduct Buffet is an operating unit, which we believe it is, when it closes, the support staff, which are terminated as a result of that closure, are also included in the individuals who need to get notice. There are not a lot of cases on this issue. The Warren Act is triggered if there's a plant closing or if there's a mass layoff. You're not relying on mass layoff here, is that right? No, Your Honor. Could you just explain what are the differences between the two, between a plant closing and a mass layoff? I think about it as though the legislature said, okay, if you're a big employer and you're going to have a reduction in force, here are the minimums or the percentages that are going to trigger a Warren notice, and that's part of the mass layoff. The plant closing is much more vague, I would say. They define it as the permanent or temporary shutdown of a single site of employment or one or more facilities or operating units within a single site of employment. I have the language in front of me. But why is there a separate provision for plant closing as opposed to the mass layoff? I'm just trying to figure out how it works in terms of the structure of the statute. The intent behind that is not explicitly said. The reason I believe they did that is because these are plans that an employer makes. When an employer is changing the way that they operate their business and they're closing a unit, they're getting rid of an entire function. As here, they closed an entire restaurant. That's a plan that the employer is going to make. They know it's going to affect all of these individuals who are going to lose their job. And so the legislature said, in that circumstance, you have to build into your plan a notice period so that you're not the only ones preparing for this change. The employees have to be notified so they can prepare for this change. The state has to be notified. I mean, why, if you're closing an operating unit, should there be notice as opposed to just, you know, laying off 50 people here and there? I think that the intent is to... And so is there any legislative issue or anything that explains this? Or are you just telling us what you believe? Well, I mean... What you're inferring from things? The purpose is pretty clearly laid out, but it never distinguishes. The purpose is strictly because they believe, the legislature believes, that employees should have notice. The state should have notice when large numbers of employees are being laid off. I believe the distinction is that if you have an employer that has a large number of employees, they drew a percentage for a mass layoff. And that number is triggered far below the numbers we're talking about here. 179 people, if this was a stand-alone business, there's no question this would have triggered warrant notice. But then the legislature... If the buffet were a stand-alone. But if you look at the whole casino, the percentages are too low. And that's what they're accounting for. They're saying, okay, if you have a large business, if you employ thousands of people, then it's not just if you terminate 33% of your workforce, it's also when you make a change to the way you do business that results in a large number of people being unemployed. To follow up on Judge Sullivan's point, what is the evidence that they are not organizationally distinct or is not operationally distinct? I mean, there certainly seems lots of evidence that there's an overlap. What evidence is there that this was distinct? Other than that it was a restaurant. I mean, it had its own name. It's called the Aqueduct Buffet. It was advertised separately from all of the other food and beverage units. Every restaurant in the casino was managed by the executive chef and the assistant director for food and beverage, right? At the highest level, absolutely. But there was also a manager over the front. There was a direct full-time manager in the front of house, which manages the server, wait staff, seating area, and a back of house manager that only worked in the buffet. They had direct management only working within the buffet. And then, of course, they report to someone higher up, as everyone does. Why of course? It wouldn't have to be an of course. I mean, this is how they've organized. They've got different places where food is served and sold. And then it's managed by a common boss, common assistant boss. It's got centralized kitchens. It's got centralized warehousing. This sort of seems like not independent restaurants. These seem to be functioning together, don't you think? I do believe they're functioning together, but that does fall in with an operating unit because they called them restaurants. They separated their staff. And when I say of course, I mean, well, when you have a large company, this is not an independent company itself. They report to someone because there's oversight there. But they had managers. Is there any real disagreement over the facts? That is, who reported to whom, who had charge of what? Or is the question really taking these facts as they are? Does this meet the test? Is this a distinct entity in the employer's organizational structure? Well, I don't think the facts are in dispute. But when you read the appellee's brief, they certainly raised some facts, which I do not believe are in dispute. So this is a summary judgment motion, but you don't think the facts are in dispute. But is distinctiveness, I mean, is that a jury question? I'm just trying to get a handle on this. Distinctiveness is a definition. Distinctiveness is the definition which I've been arguing, which I think that when you look at it, this is distinctive from other things. You can tell the difference between them. Is that a legal question on these undisputed facts? I believe so, yes. But I don't believe that they're completely undisputed because the appellee has argued things like that the food was not largely prepared. And the kitchen, which is designated for the aqueduct buffet, which their employee, who's the vice president, testified it was, they dispute whether the union acquiesced and agreed to this layoff, which is nowhere within the record. Counsel, let me ask you about those stewards. Yes, Your Honor. You said they work for the entire establishment, the casino. Yes. Are they getting relief? Do you think they should get relief here? Yes, Your Honor, I do. And I think when I look at the federal regulations, they specifically say that the operating unit is meant to encompass both small units of workers and a larger plant when their units are closed. And it's not relevant to this purpose whether the workers are production workers or support workers. So if they're supporting a unit Yes, but they don't have to be support workers of the unit, not of the larger enterprise. Well, they were support workers of the unit. Well, let's take the bookkeeper. Is there a bookkeeper for this casino, presumably? They did have a bookkeeper for the casino, yes. In your view, does he benefit under the WARN Act? If that bookkeeper was terminated because of reduction in force due to the closing of the operating unit, I do believe. I believe that the WARN Act is meant to provide notice to any employee terminated as a result of the closure of the operating unit. And the defendants have admitted in a notice of admission that all of these employees were terminated as a result of the closure. Let me ask you something. Sure. Is it fair to say that in this case, there are some circumstances peculiar to the buffet and some circumstances peculiar to the casino? Is that fair? I'm sorry, Your Honor, I don't quite understand your question. Well, let me put it differently. Is it fair to say that there are some facts common to the entire buffet, such as food purchasing, and some facts limited to the buffet? Yes, Your Honor. Some on both sides of the equation? On that, the way that that's phrased, absolutely. But the law does not. Okay. Wait a minute. Okay. Sorry. There are some facts that cut both ways. Yes, Your Honor. Okay. What do you think is the relevant standard for applying the act when there are facts that cut both ways? When there are facts that cut both ways, I believe that the court should look at it and say, is this a distinct product or facility? Because that's what the statute says. But that's just another way of stating the conclusion, because we're trying to get at, do you have an operating unit within the meaning of the statute? Yes. And we've agreed, I think, there are facts that cut both ways. So to tell me you answer it by saying, is it distinct, is just another way of saying you answer it by asking, is it an operating unit? And what I'm asking you is, how do we determine whether it's an operating unit when there are facts that cut both ways? Is it a matter of, you just add them up? Is it, which is more important? What's the principle that determines how you resolve a dispute like this? I think it depends on how the operation for the employer changes as a result of the change in business. What does that mean, a change in business? As a result of the layoff? So as a result of the layoff, what the employer did here is they closed the aqueduct buffet. They stopped offering a product, which is specifically referenced. So you look at the consequences. The consequences. If they still had an aqueduct buffet. And if you looked at the consequences, what does the court then do? Well, if there's a change or stopping, if they've stopped producing a product, if they've closed the facility, or if they stop performing a function because they either outsource it or simply cease it, then I think that's an operating unit closer. So here, they have an aqueduct buffet, they stopped using it. Well, I can see that going pretty far. Supposing they say, look, this buffet has three men's rooms. And we have an attendant for each one. Okay. But we've decided three men's rooms are too many. You only need two. They closed one men's room. Was that men's room an operating unit? Well, Your Honor, in that circumstance, they still have restrooms available that provide the exact same service with the same name. But they closed one and they let one guy off, in my example. But it certainly wouldn't trigger the numerosity requirement, because we're talking about large numbers. And so the purpose of the act would not have been triggered. So there's a minimum number? Yes. Under the Warren Act, 50 employees must lose their job. Fifty. Fifty. And under the New York Warren Act, 25. So in this circumstance, because this is a remedial law, this is meant to be broadly interpreted, because it's meant to protect people who are in a vulnerable situation. The court should adopt a broad definition that applies more frequently than not, so employers don't look for a way out of providing notice. So is your view that when there are factors on both sides, so long as there are some, shall I say, significant factors that point toward it being a unit, that carries the day? I think, speaking generally, yes. And I think in this situation, I think the vast majority of the factors weigh in favor of providing notice. I see very few, if any. And if there is some supervisory manager or the head of the corporation, that doesn't defeat the fact that there are some factors peculiar to this buffet. That's right. And the regulations actually say plant-level management, meaning is there someone over the, is there a manager over the employees there? If they had one manager that covered all of the food and beverage options, and there was no middle management between them and the workers, I think that would be a very different situation. But they had two full-time managers working within the buffet alone, and then they reported to someone over them. Did the buffet offer any distinct or unique food? It did, but we didn't get into this in discovery. It was not gotten into the exact specifics. The big distinction between the other offerings was that this was an all-you-can-eat option in the casino. You walked in, you paid one price, eat as much as you want or can, and then you leave. They had a steakhouse. The steaks were produced there. There was a Chinese restaurant. Wasn't there a second buffet that was all-you-can-eat? The second buffet was part of a separate building. It pre-dated the opening of the casino, and the employees who worked in that casino remained. It had a different name. It was called the Equestrian. Was it all-you-can-eat? That was all-you-can-eat, and it continued operations. I believe there were five employees there. It was not a significant operation. From my understanding, even if you were to combine the employees of both of them, this would still trigger Warren Act notice. What was the total number of employees for the casino, if you know? I believe it was over 1,200. Okay, thank you. All right, well, you've got your money's worth, Mr. Rose. You still have another couple of minutes for rebuttal, but we'll now hear from Ms. Sussman. Thank you, Your Honors. Thank you, Your Honors. Although there's not a lot of case law on what constitutes an operating unit, it is clear, based on the Department of Labor regulations and commentary, what kinds of evidence go towards making this determination. And the three that are highlighted are collective bargaining agreements, the employer's overall structure in terms of operation and organization, and the industry standards. So to say that certain factors cut this way, certain factors cut that way, first of all, I don't think it's supported by the record. I think the record is very good. You don't think there are any factors that cut in favor of operating units? I'm not saying there's no factors that are in dispute. I'm saying the material and genuine issues that are relevant and critical to this analysis all cut in favor of the finding that the Aqueduct Buffet was not an operating unit under the Warren Act. Well, wait a minute. So you've got, if I just understood what you said, maybe I didn't, you've got some factors in favor of the casino as the unit, and some that show the buffet as the unit, but you're saying those that show that the buffet as the unit don't count. Is that it? That's not really what I'm saying, Your Honor. I'm saying the factors that are critical to the analysis. Well, isn't critical to the analysis another way of saying relevant? Yes. So I put it to you that those that were peculiar to the buffet don't count. And you said, oh, no, no, no, no, that's not what I'm saying. But when we get into it a little further, you're saying they really don't count. Maybe I'm misunderstanding, Your Honor, and I apologize. But the three areas of inquiry concerning whether the aqueduct buffet particularly was an operating unit all cut in favor of a finding that it is not. On the issue of structure and organization, the argument is that the buffet had its own management. While there indeed was overall supervisors for the food and beverage department as a whole, there was a separate manager for the aqueduct buffet. Why does that not weigh in favor of this being a distinct entity? I'll answer that question very directly. Although my adversary keeps repeating this refrain that it had its own staff, its own management, its own management, when you look at the record and you look at the testimony of Randy Netter, who was the vice president of food and beverage, he stated quite clearly that the managers that worked in the aqueduct buffet also worked and were assigned in other food outlets throughout the facility, either frequently or as needed. That's what he testified. He said they walked through all of the food outlets all day long. Is that a factual question, whether they were assigned outside of the buffet? Is there any evidence to show that they were only assigned to the buffet, those particular managers? The only testimony in this regard, I believe, was Mr. Netter's, who said that they were assigned from time to time as needed in other areas, in other food outlets. So can a manager of an operating unit from time to time go over to help somebody else and manage another operating unit? I suppose so, Your Honor. Well, if he can, then that doesn't defeat his status as the manager of an operating unit. Well, he was a manager. The managers that operated in each of the food outlets were manager within the food and beverage outlet, and they were assigned to go where they were needed. Each of them? All 12? That's what Mr. Netter testified. They walked the facility all day long. Oh, from time to time, right? Was there somebody who was the manager of the buffet? There were people who managed the various food outlets. Was there someone with a title, Manager Aqueduct Buffet? No. No one had that title? No one had that title. Regardless of title, was there a person who managed the buffet? The testimony in the record that's before this Court is that there were managers within the food and beverage department who were trained as managers, and they were fit and did work in various food outlets according to the needs of the casino. That's the testimony I submit that Mr. Netter gave. Where was the food cooked? Where was the food cooked? That's a good question. The food was cooked in various locations. To sort of contextualize this, and Your Honors have obviously read the record, so of the approximately 177 employees who were laid off, 50 to 53, I think, were stewards who worked everywhere. Only a tiny fraction of their time was spent in the Aqueduct Buffet. Eighteen, approximately, of the employees laid off worked in something called the garde margée, which is a hospitality industry term that basically translates into cold kitchen. And that's where a lot of the food that was common to all of the food outlets was prepared. Counsel, my adversary... Including the Aqueduct Buffet. Including the Aqueduct Buffet. My adversary has frequently concluded that the vast majority or the majority of the food that was served in the Aqueduct Buffet was made in the Aqueduct Buffet. There's actually nothing in the record that says that. Did the Aqueduct Buffet have its own kitchen? The Aqueduct Buffet had its own kitchen for limited purposes, but much of the food... How do we get limited out of that? Well, you have to heat things up. Is it one tiny little burner over on the side, or is it an oven? I don't know the answer to that question. I don't know that there was any... Well, if they have facilities to cook food, doesn't that support an inference that they cook food on those facilities? Under those circumstances, Your Honor, I would agree, but there's no testimony in the record. There was a kitchen, right? Yes. With food-cooking materials? I would presume. Okay. So if there's a kitchen and it has food-cooking materials, doesn't that support an inference they cooked food there? It may. It may. Is that a reasonable inference to be drawn? I would say that's a reasonable inference to be drawn. So at least that is a fact that cuts in favor of operating units, right? I don't think that's one of the three big areas of inquiry. Oh, it may not be a big one, but it is a factor that cuts in their favor, right? I don't think so, Your Honor. I don't think that's the... But you're entitled to stand there and say everything that helps them doesn't count. That may be the rhetorical device you think is useful, and you're entitled to argue it the way you want, but it's a pretty bold argument. That's not really what I'm saying. I've also argued that they wore distinct uniforms. That's not a critical inquiry, A and B. That's also not supported by the record. They may point to several things that aren't winners. The question is, is everything they point to a loser? Have they pointed to certain facts that indicate the Aqueduct Buffet were distinct to the Aqueduct Buffet? I'm really not sure. I mean, it did have a kitchen. He says they all wore the same. Let me ask you the general question I put to your adversary. If, contrary to your fondest hopes, there are some factors that point towards it being an operating unit, and there are several on the other side that say that the casino is the operating unit, what is the standard a court should use in deciding the case? I think the standard that the court should use and the standard that the district court did use was that the really material facts relevant to this inquiry demonstrated that it wasn't an operating unit. That's suggesting there should be a weighing of the evidence, that the evidence against the buffet being an operating unit outweighs the other evidence that you don't put much weight on. Is that appropriate on a summary judgment motion? What I'm saying is that the Department of Labor has set forth the kinds of evidence that a court should consider in determining what an operating unit is, and those kinds of evidence- But some of this evidence that we're talking about fits within the second of those three big areas, structure and organization. I mean, these are little pieces that fit within that second unit. And what I'm trying to figure out is, you may have the better arguments in the end, but is there enough here to put this to a jury? This is a jury claim, right? Because it's a claim for damages? That's correct. Okay. Is there enough evidence here to put to the jury whether the Aqueduct Buffet was an operating unit? Why don't you address that? Okay. I think that there was substantial factual and evidentiary development during the discovery in this case, and the overwhelming record and evidence demonstrates it was not an operating unit. Does that mean there wasn't one or two things that could, in the minor, indicate otherwise? Well, the standard would be that no reasonable fact finder could conclude other than that this was not an operating unit. Is that correct? That is correct. Is that what the district court did? Yes, I'm sorry. Is that what the district court did? The district court considered the crucial evidentiary considerations on this inquiry, looked at the record, looked at the evidence, the material and critical evidence, and made the correct decision that looking at what should be focused on here. Look, here's the deal. The district court is not, at this point, acting as a jury or a fact finder. The district court is simply deciding whether any fact finder, any reasonable fact finder, could conclude other than that this is not an operating unit. Yes. So is that what the district court did? I think the district court did that. I think the district court found that my adversary did not develop evidence sufficient to defeat a motion for summary judgment in light of all of the development on the other side. So there's no need to weigh evidence or no need to assess credibility. Is that what you're saying? You heard my adversary say the facts really aren't in dispute. So I don't think there is a- He didn't say that at one point, and then later on he identified a couple. For example, is it true that there were some employees who worked exclusively in the buffet for six months? The record does not support that. The record does not support that. All right. Counsel, I'm willing to accept, at least for the moment, that the facts are not in dispute. That the facts of where the food was cooked, where the people went, who's the manager, what the manager did, the operational facts of what people did and what happened are not in dispute. That's your proposition, right? That's my proposition. The facts are not in material dispute. For the moment, I'm accepting that. Whether on those facts the buffet is an operating unit within the meaning of the statute, is that a question of fact or law? I think on this record, no reason- No, on any record. If the facts, if the underlying facts are undisputed, which was the premise of my question, with which you agreed, is the ultimate question, I'm not calling it fact or law for the moment, is the ultimate question of whether the buffet is an operating unit within the meaning of the act a question of fact or law? I think it's a mixed question of fact and law. Meaning what? What does that mean? Meaning you have to look at, when you look at the various pieces of evidence that are critical to this inquiry, one main area is the organizational and operational structure- Well, normally when we say it's a mixed question of fact or law, and we say that sometimes, we mean it's the application of a legal standard to facts, right? Yes. Application of a legal standard to facts. Yes. And when we say that, we say we review de novo, do we not? You do. So it can't be a pure fact question because we would say we only review it for clear error, right? Yes. So that whether you call it a pure question of law or a mixed question of law, we still have de novo review. You do. Which is very different from fact review. Correct. Okay. Now, one last thing. Do you think the views of the Department of Labor are relevant to that decision? I do. You do? Yes. As reflected in their regulation? Correct. Do you think it would be useful to ask them for their views of this case? I think to ask the Department of Labor to evaluate the analysis and structure and organization and collective bargaining agreement and the decision of the impartial chairperson. No, just to tell us what they think, if they wish to. I don't think it's necessary. No, you don't think it's necessary. Do you think it might be helpful to us? Only you can answer that question, Your Honor. If you were in our shoes, would you think it would be helpful? If I were in your shoes, I think the record is very sufficiently developed enough to make the determination. But do you think their views as reflected in their regulation are helpful to us? Yes. Okay. Thank you, Ms. Sussman. We'll hear from Mr. Rose for two minutes. So are there questions of fact, specific factual issues or not? Because I think you kind of went both ways on that. I do think that the record is unclear, but the counsel for the defendant, Apelli, has frequently controverted some of those facts. And I'd like to go through them. You don't think it's unclear? I think the record is very clear. So it is clear? I believe it is. But I'd like to go over this. So are there disputed issues of fact or not? Well, counsel is disputing the record, but the record is not unclear. And I'd like to go over those specifically. For example, whether people worked exclusively in the buffet was testified to by Mr. Netter, who was produced by them, that it was only under exceptional circumstances. He listed a special event, exactly whether special event call-out PTO. Those are the only times someone assigned to work in the buffet would work somewhere else. That's in the record at page 97. She said that there was nobody employed with the title of buffet manager. Well, if you look at the organizational structure, which is part of the record, it's on page A133 and 132. There is a buffet manager and an executive sous chef buffet. But that's not saying the facts are in dispute. It may be that in an excess of advocacy, she slightly overstated a fact. That may be or may not be. I'm not accusing her. I'm just saying that may be. But she did say, in her view, the facts were not in dispute. And that's your view, too, isn't it? I do, but I do disagree with several of the things that were said while she was arguing. Oh, yes, there may be. Of course you disagree. Of the facts. She said that's why you're both on opposite sides of the lectern. But you both agree that the facts are not in dispute, right? You disagree on the legal conclusion to be based on those facts. Your Honor, I disagree with the facts as stated by Ms. Sussman. I do not disagree. Oh, as stated by. Yes, but. I understand what you're saying. No, I do not. I do think this is a question of law. I don't think this is a misquestion of law and fact. Stop there. Okay. I want to point out that when she said some of the food was produced or maybe not all of it was produced in the buffet, there were a total of 42, 44, 45, 54 cooks employed in the buffet. Fifty-four. You can see it on page 850 to 852 of the record. Fifty-four cooks who worked in this buffet alone. They produced the vast majority. And there was testimony that said they produced all of the hot food that was served. Did they work there exclusively? Yes. Exclusively. These are employees who the independent arbitrator, the arbitrator who they cite repeatedly, said they were terminated solely because they were only assigned to work in the buffet. That's why they were fired. That's a decision by an arbitrator which they say you have to accept. How about dishwashers? Dishwashers, there were, I believe they're under bus person, but that could have been under steward as well. I'm not sure who did the dish cleaning, but they had six bus persons, all of whom worked exclusively in the buffet. And if you look at page 850 to 852, the list of people they laid off, the home department for almost all of these individuals is listed as buffet or buffet culinary. So these are issues that we disagree on. The CBA, which they continuously cite as supporting the notion that this was not an operating unit because it does not define the aqueduct buffet as a department, does not define any operating units. It does not define department. What it does define is restaurants, and it defines the aqueduct buffet as a restaurant. When you look at the decision of the independent arbitrator, the independent arbitrator found that this was what he called a, I believe, a venue. And it's one of several. That triggered the necessity under the CBA for them to pay severance. They designated this as an operating unit. They said when they close a restaurant, they have to provide severance. And they did because they drew these distinctions. They were assigned to work in this location, and then when the place closed, they were fired because they closed an operating unit. I don't think there's any question of fact here. I think that this is a question of law, and I think it's a clear one. And I think that to apply the same definition that the district court applied would significantly undermine the purpose of the Warren Act. So thank you, Your Honors, for your time. All right. Thank you both. We will reserve decision. Judge, can I just say I apologize. I did look at the organizational chart, and if I misspoke on the title of buffet, it was just an oversight. All right. Thank you.